IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DANIEL J. MATTHEWS, | Case No. 2:18-cv-01618-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| LT. CAREY, et al., | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Daniel J. Matthews ("Matthews"), a self-represented litigant formerly in custody at the Eastern Oregon Correctional Institution ("EOCI"), filed this action against the above-named Oregon Department of Corrections ("ODOC") personnel (hereinafter, "Defendants"), alleging constitutional violations pursuant to 42 U.S.C. § 1983 and state law claims for intentional infliction of emotional distress and negligence. Currently before the Court is Defendants' motion for summary judgment. (ECF No. 69.)

The Court denied Defendants' original motion for summary judgment (ECF No. 42), with leave to renew, on the ground that it did not address Matthews's operative complaint. (ECF No. 65.) In their original motion, Defendants sought summary judgment on the merits and on the

PAGE 1 – OPINION AND ORDER

ground that Matthews had not exhausted his available administrative remedies before filing this lawsuit. In its Order denying the motion with leave to renew, the Court instructed Defendants to bifurcate their motion, in light of the number of claims and defendants at issue, and first address only the issue of exhaustion in an amended motion for summary judgment.[2] (Order at 4.) Defendants again moved for summary judgment on both the ground of exhaustion and the merits (ECF No. 69), and the Court struck the merits arguments, with leave to refile once the Court determines which claims Matthews has properly exhausted. (ECF No. 74.) The Court also ordered Defendants to file a reply addressing Matthews's argument that the grievance process was not available to him. (*Id.*)

Accordingly, the motion currently before the Court is Defendants' amended motion for summary judgment on the issue of exhaustion only (ECF No. 69). The Court has jurisdiction over Matthews's claims pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons set forth below, the Court grants in part Defendants' motion for summary judgment.

## BACKGROUND

Matthews, formerly an adult in custody ("AIC") at EOCI, alleges that twenty-seven EOCI and other ODOC officials conspired to violate his constitutional rights by threatening him, placing him in segregation, interfering with his mail, frequently changing his housing assignments, searching his cell, denying him access to programming, designating him as a

---

[2] The Court also sought to resolve any outstanding discovery issues before evaluating the merits of Defendants' motion by ordering Matthews to file a Discovery Status Report explaining what, if any, discovery remained outstanding. (Order at 2-3.) Matthews objected to the Order, arguing that the Court should instead require Defendants to file a Discovery Status Report. (ECF No. 67.) The Court overruled Matthews's objection, noting that if Matthews seeks to compel further responses to his discovery requests, he must file a Discovery Status Report as the Court ordered. (ECF No. 68.) Matthews never filed a Discovery Status Report.

security threat, and citing him for false disciplinary violations, all in retaliation for Matthews's filing of grievances and lawsuits and for an article he wrote for a prison rights newsletter criticizing ODOC policies. Matthews also alleges that several of ODOC's disciplinary regulations are facially unconstitutional and unconstitutional as applied to him. (*See* Sec. Am. Compl. ("SAC").)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

### II. ANALYSIS

Defendants argue in their motion for summary judgment that EOCI's administrative remedies were available to Matthews, but he failed to file a grievance or appeal a disciplinary sanction with respect to most of the claims he asserts in this case.

**A.     Applicable Law**

"The [Prison Litigation Reform Act ("PLRA")] requires prisoners to exhaust available administrative remedies prior to filing a . . . lawsuit challenging prison conditions." *Draper v.*

PAGE 3 – OPINION AND ORDER

*Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016) (citations omitted). In *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), the Ninth Circuit held that the defendant bears the burden of proving that an administrative remedy was available to the AIC and that he failed to exhaust such remedy, because non-exhaustion is an affirmative defense. *Id.* at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production." *Id.* "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

"The exhaustion requirement found in the [PLRA also] applies to disciplinary proceedings." *Voth v. Laney*, No. 6:16-cv-779-AC, 2017 WL 1829077, at *4 (D. Or. Apr. 4, 2017) (citing *Woodford v. Ngo*, 548 U.S. 81, 86-87, 93 (2006) and *Martinez v. Peters*, No. 6:13-CV-00384-PK, 2015 WL 1607391, at *15 (D. Or. Apr. 8, 2015)).

### B. Generally Available Administrative Remedies

Defendants have met their initial burden of demonstrating that administrative remedies were generally available to Matthews to grieve his complaints and appeal his disciplinary sanctions.

#### 1. Grievance Process[6]

ODOC's grievance policy encourages AICs to communicate with line staff verbally or in writing as their primary means of resolving disputes prior to filing a grievance, so that prison

---

[6] Chapter 291, Division 109 of Oregon's administrative rules was amended effective October 18, 2019. *See* OFFICE OF THE SEC'Y OF STATE, *Permanent Administrative Order DOC 16-2019* (Oct. 17, 2019), available at https://secure.sos.state.or.us/oard/viewReceiptPDF.action?filingRsn=42510 (last visited May 4, 2021). The amendment repealed OARs 291-109-0120 through 291-109-190 and replaced them with OARs 291-109-0205 through 291-109-0250, which employ the same three-step grievance appeal structure. The rules applicable to Matthews's grievances at issue are the former rules.

officials may address questions and complaints at the lowest local level. (Decl. of Nina Sobotta in Supp. of Defs.' Mot. for Summ. J. ("Sobotta Supp. Decl.") ¶ 5.) However, if this does not bring resolution, the AIC may file a grievance if it complies with the rules and there is no other review process available. (*Id.*) AICs are informed of ODOC's grievance policy during orientation when they first arrive at a facility, during which they watch a video on the grievance system and how to use it correctly. (*Id.*) In addition, the information is contained in the AIC's handbook, and the AIC may ask any housing unit officer for a grievance form. (*Id.*) Grievance instructions are also available with the grievance forms. (*Id.*)

An AIC may grieve: (a-b) the misapplication of or lack of any administrative directive or operational procedure; (c) unprofessional behavior or action which may be directed toward an AIC by an employee or volunteer; (d) any oversight or error affecting an AIC; (e) a program failure unless it is a direct result of a misconduct report where the AIC is found in violation; (f) loss or destruction of property; (g) sexual contact, solicitation, or coercion between an employee or contractor and an AIC; and (h) sexual abuse of an AIC by another AIC if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse. (*Id.* ¶ 6.)

An AIC may file an appeal to any grievance response with the functional unit manager. (*Id.* ¶ 7.) To appeal, the AIC must complete a grievance appeal form and file it with the grievance coordinator within fourteen calendar days from the date the grievance response was sent to the AIC by the grievance coordinator. (*Id.*) An AIC may appeal the decision made by the functional unit manager by completing a grievance appeal form and filing it with the grievance coordinator within fourteen days of the date the first grievance appeal response was sent to the

AIC. (*Id.* ¶ 8.) The Assistant Director's (or designee's) decision on an AIC's grievance appeal is final and not subject to further review. (*Id.*)

An AIC must file separate grievances for each ODOC employee, even if multiple employees are involved in the same "incident or issue." (Decl. of Nina Sobotta in Supp. of Defs.' Mot. for Summ. J. ("Sobotta Decl.") ¶ 9.) An AIC is required to name the relevant ODOC staff member in their grievance, so that ODOC may respond to the AIC's concerns about that staff member. (*Id.*) An AIC grievance may request review of just one matter, action, or incident per grievance. (*Id.*)

## 2. Administrative Review of Disciplinary Proceedings

An AIC may also petition for administrative review of a disciplinary proceeding. (Decl. of Melissa Nofziger in Supp. of Defs.' Mot. Summ. J. ("Nofziger Decl.") ¶ 3.) Prison officials notify the AIC of his right to petition for administrative review when providing the AIC with a copy of the disciplinary charge(s). (*Id.*) AICs are required to file petitions for administrative review with the Inspector General within sixty calendar days after the functional unit manager signs the final order. OR. ADMIN. R. 291-105-0085(3). The AIC must use a petition for administrative review form, and any attempt to petition for administrative review through a different form or communication will be returned to the AIC with instructions to use the correct form. OR. ADMIN. R. 291-105-0085(4)(d). Upon receipt of the petition for administrative review, the Inspector General must review the case to determine if there was substantial compliance with the relevant rule, the finding was based on a preponderance of evidence, and the sanctions imposed were proper. OR. ADMIN. R. 291-105-0085(5). If the Inspector General or designee determines there was not substantial compliance with the rules, the finding was not based on a preponderance of the evidence, or the sanction(s) imposed were not in accordance with the applicable regulations, the case shall be reopened to address non-compliance, and the Inspector

PAGE 6 – OPINION AND ORDER

General or designee may dismiss or vacate the order in whole or in part. OR. ADMIN. R. 291-105-0085(7).

### C.     Failure to Exhaust

Defendants have met their initial burden of demonstrating Matthews failed to exhaust these available administrative remedies with respect to most of his claims. Defendants submitted evidence that Matthews completed the grievance review process, and thereby exhausted administrative review, for eighteen grievances between 2016 and 2019 (Sobotta Supp. Decl. ¶ 9, Attach. 4), and petitioned for administrative review in three of twenty-seven disciplinary proceedings. (Nofziger Decl. ¶ 3.) In his responses to Defendants' motions for summary judgment, Matthews does not identify any grievances or appeals missing from Defendants' declarations, nor does he dispute Defendants' assertion that he failed to exhaust the identified grievances or appeal the disciplinary orders. Rather, he argues that the grievance process was effectively unavailable to him, as addressed below.

#### 1.     Exhausted Claims at Issue

One of the eighteen exhausted grievances was Grievance No. EOCI.2016.11.03317, in which Matthews alleged, as he does here, that defendant Carey improperly held his mail for over a month, including a letter about an article that Matthews wrote for the Maoist Internationalist Ministry of Prison's ("MIM") "Under Lock and Key" newsletter. (Sobotta Supp. Decl. ¶¶ 15-20, Attach. 8.) Another grievance Matthews exhausted was No. EOCI.2017.03.049, in which Matthews alleged, as he does here, that defendant Clark also improperly denied him delivery of MIM's "Under Lock and Key" newsletter. (Sobotta Supp. Decl. Attach. 4 at 6.) Therefore, Matthews's claims relating to Carey's and Clark's withholding of the "Under Lock and Key" newsletter are properly before the Court.

///

## 2. Unexhausted Claims at Issue

Matthews alleges several claims in this case against officials he never named in a grievance or appeal, as well as claims for which he attempted to grieve an issue but did not exhaust the grievance process.

For example, in Grievance No. EOCI.2017.07.068, Matthews alleged that defendants Carey and Garton improperly transferred him to a different housing unit, but the Sobotta Declaration demonstrates that Matthews did not complete the grievance appeal process for this grievance. (*See* Sobotta Decl. ¶¶ 26-28, representing that Matthews's grievance was returned to him on August 1, 2017, for failure to comply with the rules, and Matthews never corrected and resubmitted the grievance). Therefore, Matthews did not exhaust his claims relating to the housing transfers.

In addition, Matthews alleged in Grievance No. EOCI.2016.05.048 that Hearings Officer Nevil wrongfully convicted him of violating ODOC's Disrespect II and Disobedience of an Order I regulations, and that he was terminated from his job as a result of the wrongful conviction. (*See* Sobotta Supp. Decl. ¶¶ 11-12, Attach. 6.) However, Matthews's grievance was denied because there is a separate administrative review for disciplinary proceedings, but he never requested administrative review of that case.[7] Therefore, Matthews did not exhaust his claim that he was wrongfully cited for Disrespect II and Disobedience of an Order.

---

[7] It appears that none of the three disciplinary proceedings for which Matthews sought administrative review are relevant to this case: No. 1405.EOCI.0083.EOCI.32 (relating to contraband charges), No. 1604.EOCI.0026.EOCI.32 (relating to disobedience charges), and No. 1810.EOCI.0111.EOCI.37 (relating to extortion charges). (*See* Decl. of Vanessa A. Nordyke in Supp. of Defs.' Mot. Summ. J., Attach. 2 at 3-4, 7); *see also Voth*, 2017 WL 1829077, at *5 ("Voth never filed a petition for administrative review of the Final Order and, consequently, did not exhaust the administrative remedies with regard to the [misconduct] Report.").

The Court also finds that Matthews failed to exhaust his conspiracy claim under 42 U.S.C. § 1985 because Matthews never filed a grievance alleging a broad-ranging conspiracy between the defendants he names in his conspiracy claim. *See Jackson v. Harrison*, No. CV 08-8112 DOC (JC), 2010 WL 3895478, at *11 (C.D. Cal. Aug. 25, 2010) ("[A]lthough the conspiracy claim is predicated in part on at least [a search incident], this court nonetheless finds that the Moving Defendants have met their burden to demonstrate that plaintiff has not exhausted his conspiracy claim because the foregoing grievance (and, to the extent relevant, [two additional grievances]) did not alert the prison that plaintiff was complaining about any wrongful *agreement*—let alone a broad ranging conspiracy—to deprive plaintiff of his constitutional rights. Plaintiff thus did not give fair notice of the nature of the wrong for which redress is now being sought by plaintiff's conspiracy claim.") (citation omitted); *see also Martinez v. California*, No. 1:07-cv-00996 DLB, 2009 WL 649892, at *11 (E.D. Cal. Mar. 11, 2009) (holding that "[o]f the other grievances denied at the [appeals] level prior to the instant action, Plaintiff has not exhausted any appeal in which the subject matter was a claim that Defendants were conspiring against Plaintiff to deny him his civil rights" because "the absence of other identified individuals or any other details about the alleged conspiracy does not provide enough information to allow prison officials to take appropriate responsive measures").

### 3. Exhausted Claims Not at Issue

Defendants identify two additional exhausted grievances, but they do not relate to the claims Matthews alleges here. In Grievance No. EOCI.2016.08.04214 (dated August 2, 2016), Matthews alleged that the mailroom staff ripped a piece of his mail. (Sobotta Supp. Decl. ¶¶ 13-14, Attach. 7.) However, the Court has already resolved that claim in one of Matthews's two earlier federal cases. *See Matthews v. Ulrich*, No. 2:16-cv-01958-SB, 2020 WL 6392852, at *2-3 (D. Or. Nov. 2, 2020) (entering summary judgment for the defendants on Matthews's claims that

PAGE 9 – OPINION AND ORDER

EOCI officials retaliated against him by, among other things, interfering with his mail, including the same alleged ripped letter).

Matthews also exhausted Grievance No. EOCI.2017.06.04134 (dated June 12, 2017), in which he alleged that the mailroom opened legal mail outside his presence (Sobotta Supp. Decl. ¶¶ 25-28, Attach. 11), but he did not include that allegation in this case.[8]

In summary, the Court finds that Defendants have met their initial burden of demonstrating that Matthews failed to exhaust his administrative remedies, with the exception of the exhausted claims identified above.

### D. Availability of Grievance Process

Having found that Matthews failed to exhaust available administrative remedies for many of his claims, the Court turns to whether there was "something in [Matthews's] particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

#### 1. Grievance Process Effectively Unavailable

The Court has identified two claims for which an administrative remedy was effectively unavailable to Matthews.

First, in Grievance No. EOCI.2017.01.022 (dated January 4, 2017), Matthews filed a grievance alleging a violation of due process and harassment after defendant Pope issued him a misconduct report concerning unauthorized organization and sexual activity in November 2016.

---

[8] Defendants also identified as relevant grievances Grievance No. EOCI.2017.05.040, in which Matthews alleged he missed the administrative review of a mail violation because he was scheduled for the law library at the same time (Sobotta Supp. Decl. ¶¶ 19-20, Attach. 9), and No. EOCI.2017.05.06227, in which Matthews grieved his inability to receive the publication "South Beach Singles" (Sobotta Supp. Decl. ¶¶ 21-24, Attach. 10), but Matthews has not raised those claims in this case. In any event, Matthews withdrew the first grievance and failed to exhaust the second grievance. (*See* Sobotta Supp. Decl. Atts. 9-10.)

PAGE 10 – OPINION AND ORDER

(Sobotta Decl. ¶¶ 21-22, Attach. 8.) Officials returned Matthews's grievance to him because it failed to comply with ODOC's rules prohibiting grievances about misconduct reports or disciplinary hearings, findings, or sanctions. However, it appears that filing a grievance was the only option available to Matthews, as he was not able to petition for administrative review of the disciplinary hearing because the charges were dismissed. (*See* Nordyke Decl., Attach. 2 at 5.) Without the ability to grieve or appeal the disciplinary hearing, there were no administrative remedies available to Matthews with respect to this incident.

Second, Matthews alleged in Grievance No. EOCI.2017.11.077 that he was improperly excluded from participation in EOCI's dog training program based on his Static-99 score from six years prior, but officials returned the grievance on the ground that Matthews was attempting to grieve a decision by an outside program. (Sobotta Decl. ¶¶ 29-30, Attach. 11.) However, Matthews also named defendants Yarbrough and Miles in his grievance, and he was not allowed to grieve their alleged role in his exclusion from the dog training program. Therefore, the grievance process was not available to him with respect to this claim.

### 2. Grievance Process Available

With respect to the other claims Matthews did not grieve or exhaust, Matthews argues that the grievance process was effectively unavailable to him because: (i) he feared retaliation for filing additional grievances in light of a long history of alleged retaliation; (ii) prison officials consistently denied his grievances and therefore filing a grievance would be futile; and (iii) the grievance rules were complicated and confusing. (*See, e.g.*, Pl.'s Opp'n to Summ. J. ("Pl.'s Opp'n") at 2, 4, 7-8, 12-15, ECF No. 60; Pl.'s Supp. Opp'n to Summ. J. ("Pl.'s Supp. Opp'n") at 2-6, 19-24, ECF No. 73).

///

///

### a. Fear of Retaliation

Matthews alleges that the grievance process was effectively unavailable to him because Defendants "harassed and retaliated against [him] in literally every single way available[.]" (Pl.'s Supp. Opp'n at 5; *see also id.* at 16, "There is no ability for Plaintiff to knowledgeably or effectually move forward in any way with the grievance procedure, especially if he is being so heavily threatened and harassed and retaliated against in aims to chill him from doing so.").

"[A] prisoner is excused from the exhaustion requirement in circumstances where administrative remedies are effectively unavailable, including circumstances in which a prisoner has reason to fear retaliation for reporting an incident." *Rodriquez v. Cnty. of L.A.*, 891 F.3d 776, 792 (9th Cir. 2018) (citing *McBride v. Lopez,* 807 F.3d 982, 987 (9th Cir. 2015)). To be excused from the exhaustion requirement, the plaintiff must show (1) "he actually believed prison officials would retaliate against him if he filed a grievance; and (2) a reasonable prisoner of ordinary fitness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id.* (simplified).

Matthews has failed to demonstrate that the grievance process or the administrative review process was effectively unavailable to him at EOCI. Although Matthews provides a detailed chronology of Defendants' alleged retaliatory actions over several years, his grievance history belies his allegation that he did not pursue administrative remedies due to his fear of retaliation. From October 10, 2012, through March 11, 2019, Matthews filed at least eighty-one grievances, and he completed the grievance appeal process with respect to eighteen of those grievances. (Sobotta Supp. Decl. ¶ 9, Attach. 4.) He filed most of these grievances in 2016 and 2017, despite his allegation of retaliation beginning in 2015. (Pl.'s Opp'n at 14.) Based on his own actions filing a large volume of grievances and following through with many grievances

PAGE 12 – OPINION AND ORDER

through exhaustion, Matthews cannot meet his burden of demonstrating that his fear of retaliation was the reason he did not file or appeal grievances with respect to his unexhausted claims.[9] *See Sealey v. Busichio*, 696 F. App'x 779, 781 (9th Cir. 2017) (holding that the plaintiff's evidence of alleged retaliation for filing grievances, including destructive and frequent cell searches, shortened visitation times, and less time to shower and move between locations, was insufficient to create an issue of material fact to demonstrate a fear of retaliation, especially where the plaintiff "continued to file a stream of complaints in kites" which "somewhat weakens the objective basis for his contention that he was deterred here from using the normal grievance process"); *see also Carter v. C/O McNitt*, No. 2:17-cv-00888-JO, 2020 WL 2844445, at *3 (D. Or. June 1, 2020) ("Plaintiff's submission of more than forty grievances at Snake River between 2015 and 2017 shows that the alleged threat of retaliation would not have deterred him from filing grievances about the two alleged incidents in late 2015."); *Lepesh v. Peters*, No. 2:17-cv-1135-MO, 2019 WL 4674491, at *4 (D. Or. Sept. 25, 2019) (holding that despite the plaintiff's

---

[9] Matthews alleges that "[s]tarting from Plaintiff's grievance history [in October 2015,]" the "grievance process was unavailable to him because it was immediately responded to with violations to his civil and constitutional rights and direct retaliation[.]" (Pl.'s Opp'n at 14.) If the Court found that the grievance process was effectively unavailable to Matthews after he submitted his first grievance at EOCI in 2015, the result would be that the Court, not EOCI, would be the appropriate tribunal for Matthews's grievances during Matthews's several remaining years at EOCI. If EOCI's grievance process was truly unavailable, the PLRA would allow Matthews to go straight to the Court with his dozens of grievances during those years, from complaints of lost library books to receiving the wrong size cereal box to being told to "shut up." (*See* Sobotta Decl. Attach. 4.) The purpose of the exhaustion requirement is to allow AICs to resolve their issues immediately and with prison officials in the best position to solve problems. Resorting to the courts first to solve these problems contravenes the PLRA's important goals. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (finding that Congress intended the PLRA exhaustion requirement to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 837 (9th Cir. 2001) (recognizing the value in requiring exhaustion of administrative remedies, including that it "giv[es] the agency the first chance to exercise its discretion and apply its expertise" and "avoid[s] judicial interference with an agency until it has completed its action") (citation omitted).

allegations that the defendants retaliated against him for filing grievances by firing him from his assigned job and sending him to segregation, "the evidence in the record showing that [the plaintiff] filed grievances and made verbal complaints after his . . . termination undercuts his claim that his belief that prison officials would retaliate against him for filing grievances rendered the grievance system unavailable"); Carter v. Shelton, No. 18-cv-02035-PJH, 2019 WL 2929792, at *5 (N.D. Cal. July 8, 2019) (holding that the plaintiff "failed to meet his burden in demonstrating that the threat of retaliation made administrative remedies unavailable" where he filed fourteen administrative appeals during "the time frame during which plaintiff alleges he could not file an appeal due to the threat of retaliation"); Heilbrun v. Villanueva, No. 3:14-cv-1706-SI, 2017 WL 2432152, at *7 (D. Or. June 5, 2017) (finding that the plaintiff did not make a sufficient showing that threats deterred him from filing grievances where he "filed numerous, often duplicative grievances" and "continued to file grievances for months [after the alleged threats]"); Pelayo v. Hernandez, No. C 13-3618 RMW (PR), 2015 WL 4747831, at *8 (N.D. Cal. Aug. 11, 2015) ("Taking all the facts together, the court concludes that plaintiff has not sufficiently alleged that he was 'actually deterred' from filing a grievance about defendant's retaliation.").

Based on Matthew's grievance history before the Court, the Court finds that Matthews has not met his burden of demonstrating that he was deterred from filing grievances for fear of retaliation. See Lepesh, 2019 WL 4674491, at *4 ("Construing the facts in the light most favorable to [the plaintiff], I cannot find that he has sufficiently alleged that he was deterred from filing a grievance by fears that prison officials would retaliate against him."); Carter, 2019 WL 2929792, at *5 (holding that the "plaintiff has not provided a basis for the court to find that he believed prison officials would retaliate against him" where "receiv[ing] punishments for

breaking the rules does not demonstrate retaliation" and "[r]egardless, plaintiff continued to file administrative appeals for other incidents despite now claiming he feared retaliation").

b. **Futility of Filing Grievances**

Matthews also argues that he should be excused from filing grievances because "the grievance process is extremely subjective and manipulable." (Pl.'s Opp'n at 4; *see also id.* at 13, "[W]hat is the point of the grievance procedure in the first place, if it's rigged?"; *id.* at 14, "[I]t is clear that the grievance process itself fails, fails the AIC, fails ODOC, fails the 14th Amendment of the [C]onstitution, fails this District Court and fails the facts surrounding the events and circumstances."; *id.*, "[T]he grievance coordinator is extremely partial to the state and defendants in using the grievance process to constructively obstruct inmate complaints, or give them the 'run-around.'"). An AIC's belief that his grievance will be denied is not a sufficient reason to pick and choose when to file a grievance. *See Sheridan v. Reinke*, 611 F. App'x 381, 383 n.1 (9th Cir. 2015) ("[The plaintiff's] subjective belief that the use of the grievance system would be futile, without more, does not excuse his failure to exhaust." (citing *Sapp v. Kimbrell*, 623 F.3d 813, 827 (9th Cir. 2010))); *see also Porter*, 534 U.S. at 532 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life[.]").

c. **Complex Grievance Procedures**

Matthews also argues that ODOC's grievance procedures are contradictory and difficult to satisfy. (Pl.'s Opp'n at 12-14.) While he is correct that the grievance requirements can sometimes be confusing, "where a plaintiff fails to comply with deadlines or procedural rules governing grievances, so that his own failure causes remedies to become 'unavailable,' the mistake is laid at his feet, and it is said that exhaustion was not 'proper.'" *Vega v. Bell*, No. 2:13-cv-00931-HU, 2015 WL 413796, at *3 (D. Or. Jan. 29, 2015) (citing *Ngo*, 548 U.S. at 89-91); *Ngo*, 548 U.S. at 90 ("[P]roper exhaustion of administrative remedies . . . means using all the

PAGE 15 – OPINION AND ORDER

steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).").

In addition, courts have recognized that ODOC's grievance procedures are not so complex to excuse exhaustion. *See, e.g.*, *Heilbrun*, 2017 WL 2432152, at *7 ("[T]he Court does not find that ODOC's grievance process is so complex as to be unknowable so that no ordinary prisoner can make sense of what it demands." (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)) (simplified); *see also Sapp*, 623 F.3d at 827 ("We further note that nothing in the district court record suggests that the prison had created draconian procedural requirements that would 'trip[ ] up all but the most skillful prisoners'—which might also render administrative remedies effectively unavailable so as to excuse a failure to exhaust." (citing *Ngo*, 548 U.S. at 102)).

Thus, the return of Matthews's grievances for failure to comply with the rules, or his failure to understand the grievance process requirements, does not demonstrate that the grievance process was unavailable. *See Carter*, 2020 WL 284445, at *3 ("Plaintiff's apparent misunderstanding of OAR 291-109-0140(3)(b) does not justify his failure to exhaust administrative remedies."); *Heilbrun*, 2017 WL 2432152, at *5 ("Plaintiff could have, but did not pursue his first grievance on the issue [after it was returned to him]. Thus, Plaintiff failed to exhaust his administrative remedies[.]"); (*see also* Sobotta Supp. Decl. ¶ 29, "Mr. Matthews was asked to follow the same grievance rules as all other adults in custody.").

Viewing the evidence in the light most favorable to Matthews, and noting that Defendants bear the ultimate burden of proof to establish an exhaustion defense, the Court concludes that Defendants are entitled to entry of judgment on their affirmative defense that Matthews failed to exhaust available administrative remedies for his Section 1983 claims, except those listed below. *See Hash v. Lee*, 632 F. App'x 420, 420 (9th Cir. 2016) ("The district court

properly granted summary judgment on [the plaintiff's] claims against [seventeen defendants] because [the plaintiff] did not properly exhaust his administrative remedies, and he did not show that administrative remedies were effectively unavailable to him.") (citations omitted).

### E. Summary of Remaining Claims

For the reasons discussed above, the Court grants in part Defendants' motion for summary judgment and finds that Defendants are entitled to summary judgment on Matthews's Section 1983 claims, except those listed below.

The following claims survive the Court's exhaustion analysis, either because Matthews satisfied the exhaustion requirement or because administrative remedies were effectively unavailable to him:

- Claims that defendants Carey and Clark violated his First Amendment rights and right to due process by prohibiting him from receiving "Under Lock and Key," a prisoner's rights newsletter to which he had submitted an article, without notice or a right to appeal (SAC ¶¶ 33, 45);

- Claims that defendant Pope violated his First Amendment right to be free from retaliation by initiating false disciplinary charges for Unauthorized Organization I and Non-Assaultive Sexual Activity against him, in retaliation for his "Under Lock and Key" essay criticizing EOCI's policies and procedures relating to LGBTQ inmates and for filing grievances and lawsuits (SAC ¶ 35), and that ODOC's Unauthorized Organization I regulation is facially unconstitutional and Pope unconstitutionally applied the Unauthorized Organization I violation to him based on his membership in a protected class (LGBTQ) (SAC ¶ 54);

///

- Claims that defendants Yarbrough and Miles violated his First Amendment right to be free from retaliation, and his right to equal protection, by excluding him from participating in a dog training program, in retaliation for exercising his First Amendment rights and for his membership in a protected class (LGBTQ) (SAC ¶¶ 50-51); and

- State law claims for intentional infliction of emotional distress and negligence against several defendants (SAC ¶¶ 60-61).[10]

**CONCLUSION**

For the reasons stated, the Court GRANTS IN PART Defendants' amended motion for summary judgment (ECF No. 69), and finds that Defendants are entitled to entry of judgment on their affirmative defense that Matthews failed to exhaust his administrative remedies for all claims except those listed above.

Defendants may file a renewed motion for summary judgment addressing the merits of the remaining claims by May 25, 2021.[11] Matthews may file a response by June 15, 2021. Defendants may file a reply by June 29, 2021. In light of the Court's extension of the deadline

---

[10] The PLRA requires that AICs exhaust administrative remedies before bringing an action "with respect to prison conditions under section 1983 of this title, or any other Federal law[.]" 42 U.S.C. § 1997e(a). With respect to state tort claims, the Oregon Tort Claims Act requires the AIC to give notice of the tort claim within 180 days after the alleged loss or injury. *See* OR. REV. STAT. § 30.275. Defendants have not addressed whether Matthews served a timely tort claim notice, and the current record does not include sufficient information for the Court to determine whether Matthews provided timely notice with respect to his state tort claims.

[11] The Court understands that the parties' filings may be largely duplicative of their prior submissions addressing the merits of these claims, and the parties may elect to cross-reference previously filed briefs and declarations. However, the Court bifurcated the exhaustion and merits issues to allow the parties to address the merits of these claims in depth without the constraint of page limitations in their prior submissions also addressing exhaustion.

for filing dispositive motions, Matthews may also file a motion for summary judgment on any of the remaining claims by May 25, 2021, with the same briefing schedule to follow.

DATED this 4th day of May, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge