IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL MATTHEWS,

Plaintiff,

v.

LIEUTENANT CAREY *et al*.,

Defendants.

Case No. 2:18-cv-01618-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Daniel Matthews ("Matthews"), a self-represented litigant formerly in custody at the

Eastern Oregon Correctional Institution ("EOCI"), filed this action against several Oregon

Department of Corrections ("ODOC") personnel ("Defendants"), alleging constitutional

violations pursuant to 42 U.S.C. § 1983 and state law claims for intentional infliction of

emotional distress and negligence. Before the Court is Defendants' renewed motion for summary

judgment.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and all parties

have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For

PAGE 1 – OPINION AND ORDER

the reasons explained below, the Court grants Defendants' renewed motion for summary

judgment.

## BACKGROUND

Matthews, formerly an adult in custody ("AIC") at EOCI, alleges that twenty-seven

EOCI and other ODOC officials conspired to violate his constitutional rights by threatening him,

placing him in segregation, interfering with his mail, frequently changing his housing

assignments, searching his cell, denying him access to programming, designating him as a

security threat, and citing him for false disciplinary violations, all in retaliation for his filing of

grievances and lawsuits and for an article he wrote for a prison rights newsletter criticizing

ODOC policies. Matthews also alleges that several of ODOC's disciplinary regulations are

facially unconstitutional and unconstitutional as applied to him. (*See* Second Am. Compl.

("SAC") at 1-22.)

In an Opinion and Order dated May 4, 2021, the Court granted in part and denied in part

Defendants' motion for summary judgment on the issue of whether Matthews had exhausted his

available administrative remedies before filing the present action. *See Matthews v. Carey*, No.

2:18-cv-01618-SB, 2021 WL 1759264, at *1 (D. Or. May 4, 2021). The following claims

survived:

- "Claims [under § 1983] that defendants Carey and Clark violated
  [Matthews's] First Amendment rights and right to due process by
  prohibiting him from receiving 'Under Lock and Key,' a prisoner's rights
  newsletter to which he had submitted an article, without notice or a right
  to appeal (SAC ¶¶ 33, 45)";

PAGE 2 – OPINION AND ORDER

- "Claims [under § 1983] that defendant Pope violated his First Amendment right to be free from retaliation by initiating false disciplinary charges for Unauthorized Organization I and Non-Assaultive Sexual Activity against him, in retaliation for his 'Under Lock and Key' essay criticizing EOCI's policies and procedures relating to LGBTQ inmates and for filing grievances and lawsuits (SAC ¶ 35), and that ODOC's Unauthorized Organization I regulation is facially unconstitutional and Pope unconstitutionally applied the Unauthorized Organization I violation to him based on his membership in a protected class (LGBTQ) (SAC ¶ 54)";

- "Claims [under § 1983] that defendants Yarbrough and Miles violated his First Amendment right to be free from retaliation, and his right to equal protection, by excluding him from participating in a dog training program, in retaliation for exercising his First Amendment rights and for his membership in a protected class (LGBTQ) (SAC ¶¶ 50-51)"; and

- "State law claims for intentional infliction of emotional distress and negligence against several defendants."

*Id.* at *8.

On May 25, 2021, Defendants filed a renewed motion for summary judgment on the merits. Matthews did not respond, and the Court took the matter under advisement on July 6, 2021.

## LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary

PAGE 3 – OPINION AND ORDER

judgment stage, the court views the facts in the light most favorable to the non-moving party, and

draws all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d

885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence,

or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391

U.S. 253, 289 (1968)).

## DISCUSSION

### I.    ELEVENTH AMENDMENT IMMUNITY

Defendants argue that they are entitled to summary judgment on Matthews's "state law

claims of intentional infliction of emotional distress and negligence [because they] are barred by

[the] Eleventh Amendment." (Defs.' Renewed Mot. for Summ. J. ("Defs' Renewed Mot.") at 2,

ECF No. 84.)

The Court finds the district court's decision in *Eaton v. Two Rivers Correction*

*Institution*, No. 2:20-cv-01251-SI, 2020 WL 7364975, at *1 (D. Or. Dec. 15, 2020), instructive

on the issue of whether the Eleventh Amendment bars Matthews's state law claims. In *Eaton*, the

plaintiff, an AIC at Two Rivers Correctional Institution, sued ODOC and several ODOC

employees, and the defendants argued that the Eleventh Amendment barred the plaintiff's state

law claims. *Id.* The district court explained that the plaintiff could not bring state law claims

against ODOC employees for actions they took within the course and scope of their employment,

and therefore dismissed those claims as barred by the Eleventh Amendment:

> The Supreme Court has interpreted the Eleventh Amendment generally to
> prohibit a citizen from suing a state in federal court. The State of Oregon has not
> waived its sovereign immunity from suit in federal court. The Oregon Tort Claims

PAGE 4 – OPINION AND ORDER

Act ('OTCA') does provide for a limited waiver of sovereign immunity. It is not, however, a waiver of Eleventh Amendment immunity from suit in federal court. Suits against the [S]tate of Oregon, including suits against Oregon's employees, officers, or agents acting within the course and scope of their employment, under OTCA must be brought in state court.

. . . .

The State of Oregon has not consented to suit in federal court or otherwise waived its immunity as is relevant to [the plaintiff's state law] claims. Accordingly, [the plaintiff] cannot bring state law claims against employees of the State of Oregon for actions that the ODOC employees took in the course or scope of their employment in this Court. No amendment can cure this defect.

*Id.* at *4-5 (simplified).

The summary judgment record does not demonstrate that the named defendants were acting outside the course and scope of their employment when they took the actions that Matthews complains of here. Given these facts and authorities, the Eleventh Amendment bars Matthews's state law claims. The Court therefore grants summary judgment to Defendants on Matthews's state law claims.

## II.     FIRST AMENDMENT RETALIATION

Defendants move for summary judgment on Matthews's First Amendment retaliation claims against Carey, Clark, Pope, Yarborough, and Miles. (*See* Defs.' Renewed Mot. at 1, renewing Defendants' motion for summary judgment on the merits of the exhausted claims).

### A.     Applicable Law

The Ninth Circuit has "held that in the prison context, the 'prohibition against retaliatory punishment is clearly established law in the Ninth Circuit[.]'" *Chavez v. Robinson*, 12 F.4th 978, 1001 (9th Cir. 2021) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005)). As the Ninth Circuit has explained, "the First Amendment right to file prison grievances and pursue civil rights litigation in the courts is fundamentally important because '[w]ithout those bedrock

constitutional guarantees, [AICs] would be left with no viable mechanism to remedy prison

injustices.'" *Id.* (quoting *Rhodes*, 408 F.3d at 567).

To prevail on a First Amendment retaliation claim, an AIC must satisfy five elements:

"'(1) . . . a state actor took some adverse action against [the AIC] (2) because of (3) that [AIC's]

protected conduct, and . . . such action (4) chilled the [AIC's] exercise of his First Amendment

rights, and (5) the action did not reasonably advance a legitimate correctional goal.'" *Id.* (quoting

*Rhodes*, 408 F.3d at 567-68). An AIC "does not have to allege [or demonstrate on summary

judgment] a '*total* chilling of his First Amendment rights to file grievances and to pursue civil

rights litigation in order to perfect a retaliation claim.'" *Id.* (quoting *Rhodes*, 408 F.3d at 568).

**B.      Analysis**

**1.      Carey and Clark**

Matthews alleges that Carey and Clark violated his First Amendment right to be free

from retaliation for filing grievances, pursuing civil rights litigation, and writing an article

critical of EOCI's policies regarding lesbian, gay, bisexual, transgender, and queer ("LGBTQ")

AICs, by withholding his mail, in particular mail from "Under Lock and Key," a prisoner rights

newsletter that the Maoist International Ministry of Prisons ("MIM") publishes.[1] (*See* SAC ¶¶

---

[1] The Court notes that Matthews is self-represented and has attested "under [p]enalty of [p]erjury" that his SAC's allegations, which are based largely on personal knowledge and facts that would be admissible in evidence, are "true and correct." (SAC at 22.) Accordingly, the Court considers "as evidence" the allegations in Matthews's SAC, to the extent it is appropriate to do so (i.e., the Court will not consider any legal conclusions). *See Bogle v. Clackamas Cnty.*, No. 3:15-cv-0013-SI, 2017 WL 5490870, at *1 (D. Or. Nov. 15, 2017) ("Where the party opposing summary judgment is proceeding *pro se*, the court 'must consider as evidence . . . all of [that party's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.'" (quoting *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004))); *see also Johnson v. Spivey*, No. 3:16-cv-00620-SB, 2018 WL 3468482, at *6 n.11 (D. Or. July 18, 2018) (explaining that a "[p]laintiff must do more than state legal conclusions to survive a motion for summary judgment").

PAGE 6 – OPINION AND ORDER

32-33, 45; Decl. of Nina Sobotta in Supp. of Defs.' Am. Mot. for Summ. J. ("Sobotta Decl.") ¶¶

15-18, ECF No. 80; *id.* Attach. 8 at 1-8; *id.* Attach. 4 at 6; *id.* Attach. 5 at 3, the relevant

exhausted grievances).

The record reflects that Defendants informed Matthews that they temporarily withheld

his mail because he "had been placed under investigation [and 'mail watch'] . . . due to making

comments to incite others"; any mail (i.e., five letters, two of which were from AICs at other

institutions) that Carey withheld "had been reviewed and returned"; and the withholding of

"MIM and Under Lock and Key magazines" was "due to the threat to the safety and secure order

of the facility" and based on Oregon Administrative Rule ("OAR") 291-131.[2] (Sobotta Decl.

Attach. 4 at 6; *id.* Attach. 8 at 1, 5, 7; *see also* Decl. of Nina Sobotta in Supp. of Defs.' Initial

Mot. for Summ. J. ("First Sobotta Decl.") Attach. 13 at 1, ECF No. 43, responding to Matthews's

grievance about the "MIM newsletter and Lock and Key Magazine" and explaining that there is

"a statewide list of newsletters, periodicals and magazines that are allowed and not allowed into

institutions because of their content," the periodicals at issue "occasionally have articles or

information contained in it that is prohibited mail," a security threat management ("STM")

official denied Matthew's periodicals "because of information within . . . that was STM," and the

"entire periodical is denied" if there is even one offending "article within the periodical").

The record does not include copies of, or provide any additional details about, the

contents of Matthews's confiscated and/or withheld mail. At least one other court has reviewed

and approved of the withholding of the Under Lock and Key publication. *Cf. Khalfani-El v.*

---

[2] As this Court has explained, "OAR 291-131-0035 enumerates two categories of
'Prohibited Mail' to 'be confiscated or returned to the sender,' including . . . 'Material that
Threatens or is Detrimental to the Security, Safety, Health, Good Order or Discipline of the
Facility.'" *Smith v. Powell*, No. 2:14-cv-01725-SB, 2016 WL 11384325, at *12 (D. Or. Jan. 15,
2016) (simplified).

*Clark*, No. 1:09-cv-00069, 2011 WL 403185, at \*4-5 (E.D. Mo. Feb. 2, 2011) ("Both censored

issues of Under Lock & Key . . . have been provided to the Court under seal[.] . . . Prison

officials are frequently referred to in derogatory or racially-charged terms. From this, the Court

cannot say that it appears that the Censorship Committee was motivated to censor this

publication by anything other than a concern for legitimate penal interests. . . . The publication

does appear to encourage prisoners to 'fight back' and 'unite against the injustice system' . . . .

Again, the Court cannot say that it appears that the Censorship Committee was motivated to

censor this publication by anything other than a concern for legitimate penal interests. Thus,

summary judgment will be granted to the defendants with respect to the censoring of the two

Under Lock & Key publications.").

The Court concludes that Defendants are entitled to summary judgment on Matthews's

First Amendment retaliation claim against Carey and Clark, because Matthews fails to raise a

genuine dispute of material fact as to whether Defendants' actions did not reasonably advance

legitimate penological interests. *See Jensen v. Wash. State Dep't of Corr.*, 543 F. App'x 691, 692

(9th Cir. 2013) (holding that the "district court properly granted summary judgment on [the

AIC's] First Amendment claim because [he] failed to raise a genuine dispute of material fact as

to whether defendants' actions did not reasonably advance legitimate penological interests," and

noting that infringement upon an AIC's "right to free exercise is valid if reasonably related to a

legitimate penological interest"). To be sure, nothing in the record reflects that the withheld mail

did *not* include material that could incite others and/or threaten the safety and security of the

facility. *See Merchant v. Lopez,* 502 F. App'x 700, 701 (9th Cir. 2013) (explaining that an

"[AIC] plaintiff bears the burden of pleading and proving the absence of legitimate correctional

goals for the conduct of which he complains") (simplified); *see also Brown v. Trejo*, 818 F.

App'x 599, 603 (9th Cir. 2020) (stating that an AIC's "First Amendment rights to receive mail may be limited by regulations that 'are reasonably related to legitimate penological interests', including prison security") (citation omitted); *Holbrook v. Kingston*, 552 F. App'x 125, 129 (3d Cir. 2014) (agreeing with the district court that "the defendants' decision to place [the AIC] on a mail watch was reasonably related to the legitimate penological interest of institutional security," and rejecting the AIC's specific arguments as to why the defendants' "legitimate penological interest [was] pretextual").

For these reasons, the Court grants Defendants' motion for summary judgment on Matthews's First Amendment retaliation claim against Carey and Clark.

### 2.    Pope

Matthews brings a First Amendment retaliation claim against Pope. Specifically, Matthews asserts that Pope violated his First Amendment right to be free from retaliation for writing the article critical of ODOC's policies regarding LGBTQ AICs, by initiating false disciplinary charges against him for Unauthorized Organization I and Non-Assaultive Sexual Activity. (*See* SAC ¶ 35; *see also* Sobotta Attach. 5 at 3, reflecting that Matthews filed a grievance about Pope on January 4, 2017, which concerned a misconduct report; Decl. of Vanessa Nordyke in Supp. of Defs.' Initial Mot. for Summ. J. ("Nordyke Decl.") Attach. 1 at 4, ECF No. 45, describing Pope's November 8, 2016 misconduct report against Matthews).

As with Matthews's First Amendment retaliation claims against Carey and Clark, Defendants are entitled to summary judgment on Matthews's First Amendment retaliation claim against Pope because Matthews fails to raise a genuine dispute of material fact as to whether Defendants' actions did not reasonably advance legitimate penological interests. In fact, Pope's misconduct report reflects that he investigated an informant's report about numerous AICs

engaging in impermissible sexual activity and charged Matthews based on the information

received from the informant:

> On [November 8, 2016,] I completed an investigation involving possible sexual
> activity that took place on [the] F3 housing [u]nit. An informant, who had
> knowledge of events that occurred, utilized [the] Prison Rape Elimination Act
> [('PREA')] reporting mechanisms to bring the activity to staff attention. Several
> confidential statements were provided during the course of the investigation. The
> information obtained resulted in the positive identification of sixteen inmates on
> [the] F3 housing unit who engaged in non-assaultive sexual activity in either the
> shower or in the bunk areas after lights were turned out for the night. Each
> participant concealed the misconduct and disrupted the operations of those
> respective public areas of the unit. These inmates engaged in this prohibited
> behavior in the presence of individuals who were not willing participants. The
> Oregon Department of Corrections has a zero tolerance policy for sexual abuse
> and sexual harassment.
>
> During the course of the last several months[, Matthews] . . . has been engaging in
> sexual activity on [the] F3 housing [u]nit with another inmate.

(Nordyke Attach. 1 at 4.) Carey, the officer-in-charge who reviewed Pope's misconduct report,

also noted that his "[e]xperience has shown that inmates engaging in this type of activity in a

correctional setting could lead to a sexually assaultive situation if not segregated." (Nordyke

Attach. 1 at 4.)

Matthews maintains that Pope's actions "did not advance any legitimate [or] valid

correctional goal(s) or was an exaggerated response[.]" (SAC ¶ 35.) Matthews, however, has

failed to meet his burden of proving the absence of legitimate correctional goals, such as

preventing sexual abuse, sexual harassment, and "sexually assaultive situation[s]," for the

conduct of which he complains. *See Matthews v. Brown*, No. 2:20-cv-2515, 2021 WL 2366011,

at *9 (E.D. Cal. June 9, 2021) (explaining that the defendants "were investigating a sexual

assault, which no doubt implicated institutional security and a legitimate penological interest");

*Lute v. Johnson*, No. 1:08-cv-00234, 2012 WL 913749, at *5 (D. Idaho Mar. 16, 2012) (stating

that "it is beyond dispute that prohibiting sexual activity in prison is a legitimate governmental

PAGE 10 – OPINION AND ORDER

interest," and noting that "'one major area of security concern is sexual activity, especially sexual activity among inmates, which has a history of being extremely dangerous and volatile'") (citation omitted); *Mintun v. Peterson*, No. 06-cv-00447, 2010 WL 1338148, at *11 (D. Idaho Mar. 30, 2010) ("Prohibiting sexual activity in prison is unquestionably a legitimate penological interest.").

Mathews also asserts that the disciplinary charges Pope initiated against him were false, and that the "November 2016 . . . write-up itself was extremely vague and overbroad and did not accuse [Matthews] of *any* sort of specific sexual conduct with another inmate[.]" (SAC ¶¶ 35, 55.) Matthews further asserts that Pope's misconduct-related conclusions regarding AICs engaging in sexual activity was only "based on a 'shower log' as the[] excuse[.]" (SAC ¶ 35.) Additionally, Matthews asserts that Pope and Carey "constructed" the charges against him for "allegedly being gay and having some kind of remove homosexual activity [requirement]," and that the charges ultimately "did not stick because there was no foundation, or evidence, or support, etc[.]" (Pl.'s Resp. to Defs.' Initial Mot. for Summ. J. ("Pl.'s Resp.") at 23, ECF No. 60; *see also id.* at 7, referring to Pope and Carey's "[f]alse PREA write-up[]" regarding Matthews).

The Ninth Circuit has found that an "officers' 'false' actions sufficiently alleged the absence of a legitimate penological reason." *Clinton v. Cooper*, 781 F. App'x 582, 585 (9th Cir. 2019) (citing *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012)). The plaintiff in *Watison*, for example, plausibly alleged "the absence of a legitimate penological reason for the alleged adverse actions: [The plaintiff] pleaded . . . that (a) [the correctional officer] filed a false disciplinary complaint against him and (b) [the warden] made false statements to the parole board, both in retaliation for grievances [he] had filed against [the correctional officer]."

PAGE 11 – OPINION AND ORDER

*Watison*, 668 F.3d at 1115. The Ninth Circuit concluded that the district court improperly

dismissed the plaintiff's First Amendment retaliation claim at the motion to dismiss stage. *Id.*

Unlike *Clinton* and *Watison*, the summary judgment record here demonstrates that Pope's

charges against Matthews were based largely on reports from an "informant, who had knowledge

of the events that occurred" and who utilized PREA's reporting mechanisms to notify prison

officials about AICs engaging in inappropriate sexual activity. (Nordyke Attach. 1 at 4.) The

information Pope "obtained resulted in the positive identification of sixteen inmates . . . who

engaged in non-assaultive sexual activity in either the shower or in the bunk area," and caused

Pope and others to conclude that Matthews had engaged in inappropriate sexual activity.

(Nordyke Attach. 1 at 4; *see also id.* Attach. 1 at 4, "Experience has shown that inmates

engaging in this type of activity in a correctional setting could lead to a sexually assaultive

situation if not segregated."). These facts are significant because Matthews does not dispute the

fact that an informant used PREA reporting mechanisms to levy complaints against Matthews

and others.[3]

Under the circumstances presented and, on the current record, no reasonable jury could

conclude that Pope's actions did not reasonably advance a legitimate correctional goal. *Cf. Evans*

*v. Deacon*, 687 F. App'x 589, 592 (9th Cir. 2017) (framing the appropriate inquiry as whether

the district court was "incorrect in its conclusion that [the prison official's] misconduct report

reasonably advanced a legitimate correctional goal"); *see also Brennan v. Aston*, No. 17-1928-

JCC-MLP, 2020 WL 4808657, at *22 (W.D. Wash. June 8, 2020) ("Viewing this evidence in the

---

[3] Ultimately, prison officials dismissed all of the charges against Matthews, without
prejudice, six days after Pope issued the misconduct report, because Matthews's hearing officer
determined that "addition[al] investigation [was] necessary." (Nordyke Decl. Attach. 1 at 1, 4; *id.*
Attach. 2 at 5.)

light most favorable to Plaintiff, no reasonable jury could conclude that [the defendant] did not have a legitimate penological interest[.]").

### 3.    Yarborough and Miles

Defendants move for summary judgment on Matthews's First Amendment retaliation claim against Yarborough and Miles. This claim is based on Matthews's allegation that Yarborough and Miles violated his First Amendment right to be free from retaliation relating to Matthews exercising his First Amendment rights and membership in a protected class, by excluding him from participating in a dog training program. (SAC ¶¶ 50-51.)

Mathews fails to raise a genuine issue of material fact as to whether Yarborough and Miles took any adverse actions against Matthews *because of* Matthews's exercising of his First Amendment rights or membership in a protected class. As EOCI's grievance coordinator has explained, the service dog training program at issue "ha[s] set its own standards for who they w[ill] allow into the program," and "[t]he decision not to let AIC Matthews into the dog program was not a decision made by [O]DOC but by the dog program people who are not part of [O]DOC." (First Sobotta Decl. ¶ 30.) Given this evidence, Defendants are entitled to summary judgment on Matthews's First Amendment retaliation claim against Yarborough and Miles. *See Alverto v. Henderling*, 845 F. App'x 674, 674-75 (9th Cir. 2021) ("The district court properly granted summary judgment because, even assuming defendant Samp had retaliatory motive against Alverto, Alverto failed to raise a genuine dispute of material fact as to whether defendants took any adverse actions against Alverto because of Alverto's grievance against defendant Samp.").

## III.    PROCEDURAL DUE PROCESS

Defendants move for summary judgment on Matthews's procedural due process claim against Carey and Clark. Specifically, Matthews alleges that Carey and Clark violated his right to

PAGE 13 – OPINION AND ORDER

procedural due process by confiscating and/or withholding his mail without notice or a right to appeal. (SAC ¶¶ 33, 45.) The Court concludes that Defendants are entitled to summary judgment on this claim.

The record reflects that Matthews exhausted grievances regarding Carey and Clark's withholding and/or confiscation of some of Matthews's incoming mail. (*See* Sobotta Decl. ¶¶ 15-18; *id.* Attach. 8 at 1-8; *id.* Attach. 4 at 6; *id.* Attach. 5 at 3, setting forth the relevant exhausted grievances and second-level grievance responses). These records demonstrate that Defendants provided Matthews with opportunities to appeal to independent officials and that Matthews received notice before filing his grievances. (*See* Sobotta Decl. Attach. 4 at 6, noting that Matthews's grievance "alleg[e]d [that he] did not receive a reason for the denial of MIM and Under Lock and Key magazines"; *id.* Attach. 8 at 8, reflecting that Matthews stated that Carey "told [him] he personally was holding [Matthews's] mail").

The Ninth Circuit has affirmed the dismissal of an AIC's "procedural due process claim regarding the confiscation of his mail [where the AIC's] allegations demonstrate[d] that [the] defendants provided him with notice and an opportunity to appeal to an independent official." *Smith v. Baker*, 678 F. App'x 566, 567 (9th Cir. 2017). Consistent with *Smith*, the Court grants Defendants' motion for summary judgment on Matthews's procedural due process claim against Carey and Clark because Matthews received notice and opportunities to appeal to independent officials.

## IV.    EQUAL PROTECTION

Matthews exhausted an equal protection claim against Yarborough and Miles, based on Matthews's theory that Yarbrough and Miles violated his right to equal protection by excluding him from participating in the service dog training program. (SAC ¶¶ 50-51.) The Court

PAGE 14 – OPINION AND ORDER

concludes that Defendants are entitled to summary judgment on Matthews's equal protection

claim.

As discussed above, the dog training program, not ODOC, Yarborough, or Miles, made

the decision not to allow Matthews into the program. Accordingly, Matthews fails to raise a

genuine dispute of material fact as to whether Yarborough and Miles intentionally discriminated

against him on the basis of his membership in a protected class. *See Hill v. Holland*, 829 F.

App'x 260, 261 (9th Cir. 2020) ("The district court properly granted summary judgment on

Hill's equal protection claim because Hill failed to raise a genuine dispute of material fact as to

whether [the defendants] intentionally discriminated against Hill on the basis of his membership

in a protected class.").

## V.      UNAUTHORIZED ORGANIZATION

Matthews alleges that ODOC's Unauthorized Organization I regulation (OAR 291-105-

0015) is facially unconstitutional, and that Pope unconstitutionally applied the Unauthorized

Organization I violation to him based on his membership in a protected class. (SAC ¶ 54.)

### A.      Applicable Law

The Supreme Court has "held that a regulation that impinges upon a prisoner's

constitutional rights is valid if the regulation is reasonably related to legitimate penological

interests." *Morrison v. Hall*, 261 F.3d 896, 901 (9th Cir. 2001) (simplified). The Supreme Court

developed a four-part test "[t]o guide courts in evaluating whether a challenged regulation is

reasonably related to legitimate penological interests[.]" *Id.* The four parts are:

> (1) whether the regulation is rationally related to a legitimate and neutral
> governmental objective; (2) whether there are alternative avenues that remain
> open to the inmates to exercise the right; (3) the impact that accommodating the
> asserted right will have on other guards and prisoners, and on the allocation of
> prison resources; and (4) whether the existence of easy and obvious alternatives
> indicates that the regulation is an exaggerated response by prison officials.

PAGE 15 – OPINION AND ORDER

*Id.* (quoting *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001)). All four parts are

relevant to a court's analysis, but "the Ninth Circuit has recognized that the first of these factors

constitutes a *sine qua non*." *Id.* (simplified). The Ninth Circuit has also applied this four-part test

in an "as-applied constitutional challenge" to an OAR. *Id.* (citing *Prison Legal News*, 238 F.3d at

1146-48).

### B.    Analysis

OAR 291-105-0015(4)(q) provides that "[a]n [AIC] commits Unauthorized Organization

I if he/she involves himself/herself with a group of two or more persons, whether formal [or]

informal, and who collectively or in concert creates or actively promotes, recruits, participates in

or involves himself/herself in security threat activity." (*See* Nofziger Decl. ¶ 4, citing the version

of OAR 291-105-0015(4)(q) that was effective as of December 7, 2011, and noting that the rule

was revised on June 7, 2018 but there were "no [material] changes made to Unauthorized

Organization I or II"); *see also* OAR 291-105-0015(4)(q) ("An AIC commits Unauthorized

Organization I when that AIC is part of a group of two or more persons (whether formal or

informal), who collectively, or in concert, create or actively promote, recruit, participate in, or is

involved in security threat activity."); OAR 291-105-0010(38) (defining "Security Threat

Activity" as "AIC behavior that poses a significant threat to the safe and secure operation of a

facility").[4]

///

---

[4] Prior versions of OAR 291-105-0010(38) included a similar but more detailed definition of "Security Threat Activity": "Security Threat activity: Inmate behavior which poses a significant threat to the safe and secure operation of the facility, including but not limited to, threatening or inflicting bodily injury on another person, posing a high risk of escape, promoting or engaging in disruptive group behavior, distributing a controlled substance, or being involved in any other activity that could significantly threaten the safe and secure operation of the facility."

The Court concludes that Defendants are entitled to summary judgment on Matthews's

facial and as-applied challenges to OAR 291-105-0015(4)(q), because Matthews fails to raise a

genuine dispute of material fact as to: (1) whether this regulation was not reasonably related to a

legitimate penological interest, or (2) whether the complained-of conduct (i.e., charging

Matthews with Unauthorized Organization I and disciplining/segregating Matthews based

largely on an informant's utilization of PREA reporting mechanisms to notify prison officials

about AICs engaging in inappropriate sexual activity) was not reasonably related to legitimate

penological interests. *See Kindred v. Bigot*, 821 F. App'x 842, 843 (9th Cir. 2020) ("The district

court properly granted summary judgment on Kindred's free exercise claims because Kindred

failed to raise a genuine dispute of material fact as to whether . . . the regulations at issue were

not reasonably related to a legitimate penological interest."); *Gronquist v. Cunningham*, 747 F.

App'x 532, 533-34 (9th Cir. 2018) ("The district court properly granted summary judgment on

both Gronquist's facial and as-applied constitutional challenges to the laws and [prison]

regulations [at issue here] because Gronquist failed to raise a genuine dispute of material fact as

to whether the [complained-of conduct] was not reasonably related to legitimate penological

interests.").

The summary judgment record includes evidence reflecting that Carey's experience as a

prison official "has shown that inmates engaging in this type of activity in a correctional setting

[i.e., sexual activity] could lead to a sexually assaultive situation if not segregated." (Nordyke

Attach. 1 at 4.) Courts in this circuit have made similar observations regarding AICs engaging in

sexual activity. *See, e.g.*, *Matthews*, 2021 WL 2366011, at *9 (explaining that the defendants

"were investigating a sexual assault, which no doubt implicated institutional security and a

legitimate penological interest"); *Lute*, 2012 WL 913749, at *5 (stating that "it is beyond dispute

that prohibiting sexual activity in prison is a legitimate governmental interest," and noting that "one major area of security concern is sexual activity, especially sexual activity among inmates, which has a history of being extremely dangerous and volatile") (simplified); *Mintun*, 2010 WL 1338148, at *11 (recognizing that "[p]rohibiting sexual activity in prison is unquestionably a legitimate penological interest").

The summary judgment record also includes evidence reflecting that unauthorized organization "often results in violent behavior," that "[t]he actions that constitute Unauthorized Organization are often a way to silence other AICs through violence and intimidation," and that "[i]n a setting with hundreds of AICs, the actions of a few can, and have, resulted in large scale disturbances, significant injuries to AICs and staff members, and even death." (Nofziger Decl. ¶ 5.)

The Court finds unpersuasive Matthews's claims that OAR 291-105-0015(4)(q) is overbroad and vague because it "lacks guidance" as to what constitutes "security threat activity," does not "give proper notice [as to] who or what the rule applies to," and is "not narrowly drawn," insofar as it "could apply to all members of any class, race, sexual orientation, age, nationality, religious membership, etc[.]" (SAC ¶ 54.) OAR 291-105-0015(4)(q)'s language clearly applies only to groups of two or more AICs who create or actively promote, recruit, participate in, or are involved in "security threat activity," which is defined under the OARs and would logically include AICs engaging in sexual activity, a well-recognized institutional safety and security concern.

Based on the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment on Matthews's facial and as-applied challenges to OAR 291-105-0015(4)(q).

PAGE 18 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' renewed motion for summary

judgment (ECF No. 84).

**IT IS SO ORDERED.**

DATED this 27th day of October, 2021.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 19 – OPINION AND ORDER